UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Charles Philip Wiggin

    v.                                Civil No.  23-cv-30-JL
                                        Opinion No. 2023 DNH 085

Kilolo Kijakazi, Acting
Commissioner of Social Security

## **MEMORANDUM ORDER**

      Charles Philip Wiggin appeals the Acting Commissioner's decision denying his applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  The Administrative Law Judge ("ALJ") found that although Mr. Wiggin had severe impairments due to obstructive sleep apnea, degenerative disc disease, and post-traumatic stress disorder, he retained the residual functional capacity to do his prior work as a spooling machine operator.  Mr. Wiggin contends that the ALJ erred in his evaluation of the medical opinion of a consultative psychologist and improperly assessed his residual functional capacity.

      On appeal, Mr. Wiggin asks the court to reverse the Acting Commissioner's decision and to remand the case for further administrative proceedings. See LR 9.1(c). The court has jurisdiction under 42 U.S.C. § 405(g) (Social Security). The Acting Commissioner objects to Mr. Wiggin's motion and moves to affirm the decision. See LR 9.1(d). For the reasons that follow, the court grants the Acting Commissioner's motion to affirm and denies Wiggin's motion to reverse and remand.

I. **Applicable legal standard**

For purposes of review under § 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020). Questions of law are reviewed de novo. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The ALJ's factual findings must be affirmed if they are supported by substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1154 (cleaned up). The court must affirm the ALJ's findings, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

To establish disability for purposes of benefits under Title II and Title XVI under the Social Security Act, an adult claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). "An ALJ employs a five-step test to determine if an individual is disabled within the meaning of the Social Security Act" that asks "questions that are sequential and iterative, such that

2

the answer at each step determines whether progression to the next is warranted." Sacilowski, 959 F.3d at 433. The steps are: (Step 1) whether the claimant is currently engaging in substantial gainful activity; if not, (Step 2) whether the claimant has a severe impairment; if so, (Step 3) whether the impairment meets or medically equals an entry in the Listing of Impairments;[1] if not, (Step 4) whether the claimant's residual functional capacity is sufficient to allow her to perform any of her past relevant work; and if not, (Step 5) whether, in light of the claimant's residual functional capacity, age, education, and work experience, she can make an adjustment to other work available in the national economy.[2] Id. (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v)); see also §§ 416.920(a)(4)(i)-(v).[3] The claimant bears the burden of showing he is disabled through the first four steps, but at Step 5 the Commissioner must provide evidence to show that there are jobs in the national economy that the claimant can do. Sacilowski, 959 F.3d at 434.

---

[1] To evaluate a mental impairment for purposes of the Listing of Impairments at Step 3, the ALJ must follow a technique to identify the impairment and to rate the degree of functional imitation caused by the impairment. 20 C.F.R. § 404.1520a; 20 C.F.R. § 416.920a.

[2] Between Step 3 and Step 4, the court assesses the claimant's residual functional capacity to determine whether he has the capacity to work despite his limitations. 20 C.F.R. §§ 404.1545(a) & 416.945(a).

[3] 20 C.F.R. Part 404 applies to claims for disability insurance benefits, while 20 C.F.R. Part 416 applies to claims for supplemental security income, but the regulations provide the same five-step analytical framework and are otherwise the same for purposes of the issues in this case. See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989). For that reason, the court will refer to Part 404 in the citations to the regulations.

## II. Background

The background information is a summary of the plaintiff's factual statement and the Acting Commissioner's statement, along with references to the administrative record ("Tr.").[4]

### A. Employment and medical background

From 2010 to 2016, Mr. Wiggin worked as a spooling machine operator, which required him to use machinery to wind cable onto spools.[5] He then worked for Tractor Supply Co. as a receiver and shipper where he loaded and unloaded trucks using a forklift, filled propane tanks, stocked shelves, and maintained the outside area of the facility.[6] Mr. Wiggin was fired from the job at Tractor Supply in September of 2016 when he refused to do something that was not in his job order.[7]

Mr. Wiggin applied for social security benefits in April of 2020 when he was 53.[8] He alleged disability based on a primary diagnosis of disorders of the skeletal spine and a secondary diagnosis of sleep-related breathing disorders.[9] Mr. Wiggin had spinal surgeries in 2005 and 2006.[10] During the period between December 2019 and March

---

[4] Under the Local Rules in this district, the plaintiff in a social security case is tasked with filing a statement of material facts, and the government is directed to file a statement of facts only if material facts were omitted from the plaintiff's statement. LR 9.1(c) & (d).
[5] Tr. at 302-03.
[6] Tr. at 301-03.
[7] Tr. at 295 & 331.
[8] Tr. at 21; Tr. at 69 (date of birth).
[9] Tr. at 69.
[10] Tr. at 602.

4

2020, Mr. Wiggin was diagnosed with obstructive sleep apnea and was prescribed a CPAP machine to sleep.[11] He had a psychiatric assessment in November of 2019 because of depression, nightmares, and other symptoms and was diagnosed with post-traumatic stress disorder related to his younger brother's suicide.[12]

For purposes of his social security application, Mr. Wiggin had a consultative psychological examination with Darlene R. Gustavson, Psy.D. in May of 2021.[13] Dr. Gustavson noted that Mr. Wiggin was polite and cooperative but was also depressed and tearful.[14] Based on her testing and evidence made available to her, Dr. Gustavson found that Mr. Wiggin was able to understand and remember information and complete tasks, to interact with others as needed, and to sustain attention and focus to complete tasks.[15] She also found that he was "unable to consistently regulate his emotions to [sic] due to irritability, fatigue, poor sleep and resulting poor attendance."[16] She recommended continued mental health treatment.[17]

Jan Jacobson, Ph.D. reviewed the record in August of 2021, including Dr. Gustavson's evaluation of Mr. Wiggin, to complete a mental residual functional capacity

---

[11] Tr. at 70-75.
[12] Tr. at 569-71.
[13] Tr. at 605-609.
[14] Tr. at 607.
[15] Tr. at 608.
[16] Id.
[17] Tr. at 609.

assessment for the New Hampshire Disability Determination Service.[18] Dr. Jacobson found no limitation in Mr. Wiggin's ability understand and remember, to sustain concentration and persistence, and to have social interactions, but found that Mr. Wiggin had moderate limitation in his ability to respond appropriately to changes in the work setting.[19] Dr. Jacobson stated that despite the moderate limitation, Mr. Wiggin could respond appropriately to infrequent changes in the work setting.[20]

**B. Procedural background**

Mr. Wiggin's applications for social security benefits were denied initially and on reconsideration.[21] Mr. Wiggin requested a hearing, which was held by telephone on February 1, 2022.[22] Mr. Wiggin was represented by his attorney and testified.[23] A vocational expert also testified.[24]

Based on the record evidence and the testimony at the hearing, the ALJ found that Mr. Wiggin had severe impairments of obstructive sleep apnea, degenerative disc disease, and post-traumatic stress disorder ("PTSD") and a residual functional capacity to do light work with certain additional limitations.[25] The ALJ then found, relying on the vocational

---

[18] Tr. at 108-09.
[19] Tr. at 109.
[20] Id.
[21] Tr. at 21.
[22] Id.
[23] Id.
[24] Id.
[25] Tr. at 24 & 26.

expert's opinion, that Mr. Wiggin could do his previous work as a spooling machine operator.[26] For that reason, the ALJ found that Mr. Wiggin was not disabled.[27]

Mr. Wiggin sought review of the ALJ's decision by the Appeals Council.[28] The Appeals Council denied review, making the ALJ's decision the final decision of the Acting Commissioner.[29]

## III. Analysis

In support of his motion to reverse and remand the ALJ's decision, Mr. Wiggin contends that the ALJ erred in his evaluation of Dr. Gustavson's opinion and failed to address his own finding of moderate limitations that caused the ALJ to err in the residual functional capacity assessment. Specifically, Mr. Wiggin contends that the ALJ did not consider Dr. Gustavson's opinion that he had difficulty regulating his emotions, which he contends would cause him to be off task and preclude him from working. Mr. Wiggin also contends that the ALJ's finding of moderate impairment in his ability to adapt and manage himself, for purposes of the mental impairment technique under § 404.1520a, conflicts with the residual functional capacity assessment. The Acting Commissioner

---

[26] Tr. at 30.
[27] Tr. at 30-31.
[28] Tr. at 1.
[29] Id.

argues that the ALJ properly considered Dr. Gustavson's opinion and correctly assessed Mr. Wiggin's residual functional capacity in light of the other evidence in the record.

## A. <u>**Medical opinions**</u>

For purposes of determining a claimant's residual functional capacity, the ALJ considers the medical opinions and prior administrative medical findings in the administrative record. 20 C.F.R. § 404.1520c(a). The ALJ determines the persuasiveness of medical opinions and findings based on the following factors: (1) the supportability of a medical opinion; (2) the extent to which the opinion is consistent with evidence from other sources; (3) the medical source's relationship with the claimant, (4) the specialization of the medical source, and (5) certain other factors such as the familiarity of the medical source with the disability program. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. § 404.1520c(a); § 404.152c(b)(2); Purdy v. Berryhill, 887 F.3d 7, 13, n.8 (1st Cir. 2018).

The ALJ found Dr. Gustavson's opinion that Mr. Wiggin had difficulty regulating his emotions persuasive and stated that the opinion was well supported by Dr. Gustavson's evaluation of Mr. Wiggin. The ALJ found that Dr. Jacobson's opinion was generally consistent with Dr. Gustavson's opinion and found Dr. Jacobson's opinion persuasive that Mr. Wiggin could adapt and manage himself if he were limited to infrequent changes in the work setting. The ALJ also found, based on that opinion, that infrequent changes in the work setting would minimize the triggers for Mr. Wiggin's emotional outbursts.

Although Mr. Wiggin states generally that the ALJ did not evaluate Dr. Gustavson's opinion in accordance with the regulatory requirements, he identified no errors. As noted above, the ALJ found Dr. Gustavson's opinion persuasive and applied the correct standard in his evaluation of the opinion. The ALJ also found Dr. Jacobson's opinion generally persuasive to the extent it agreed with Dr. Gustavson's findings. The ALJ found based on Dr. Jacobson's opinion that Mr. Wiggin's emotional outbursts could be controlled by infrequent changes in the work setting. Mr. Wiggin has not shown any error in the ALJ's evaluation of Dr. Gustavson's opinion and did not address Dr. Jacobson's opinion. Therefore, the ALJ properly relied on both opinions for purposes of the residual functional capacity assessment.

## B. The ALJ's paragraph B finding

The ALJ followed the technique required under § 404.1520a in finding that Mr. Wiggin did not meet or equal the requirements for a listed mental impairment which includes making findings for the "paragraph B" criteria that pertain to the severity of mental impairments.[30] In evaluating the paragraph B criteria, the ALJ found that Mr. Wiggin had moderate limitation in his ability to adapt or manage himself. Because the

---

[30] Tr. at 25-26. For paragraph B, "[t]he ALJ uses a five-point rating scale: none, mild, moderate, marked, and extreme." Leean L. v. Kijakazi, 2022 WL 17351912, at *3 (D.R.I. Dec. 1, 2022) (citing 20 C.F.R. § 416.920a(c)(4), which is the same as § 404.1520a(c)(4)).

9

applicable listed impairment, Listing 12.15, required at least two "marked" limitations or one "extreme" limitation, Mr. Wiggin did not meet the requirements for Listing 12.15.[31]

Mr. Wiggin argues that the ALJ erred in not incorporating his finding for purposes of paragraph B into the residual functional capacity assessment. An ALJ makes paragraph B findings for Steps 2 and 3 to rate the severity of mental impairments and to determine whether a mental impairment meets or equals a listed impairment. SSR 96-8p, 1996 2l 374184, at *4. An ALJ does the residual functional capacity assessment separately between Steps 3 and 4 if the ALJ finds that the claimant does not have an impairment that meets or equals a listed impairment. § 404.1520a(d)(3). The paragraph B severity ratings are not functional limitation findings, which are required for a residual functional capacity assessment and require a more detailed assessment than the paragraph B ratings. SSR 96-8p, 1996 2l 374184, at *4; Vigil v. Colvin, 805 F.3d 1199, 1203 (10th Cir. 2015). Therefore, contrary to Mr. Wiggin's argument, the ALJ's paragraph B moderate limitation finding is not a functional capacity finding for purposes of the residual functional capacity assessment, and he has not shown any error in the ALJ's consideration of the paragraph B finding.

## C. Residual functional capacity assessment

A claimant's "residual functional capacity is the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545. The ALJ found that:

---

[31] Tr. at 26.

> claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift, carry, push and pull twenty pounds occasionally and ten pounds frequently; he can stand and walk for six hours in an eight hour workday; he can sit for six hours in an eight-hour workday with normal breaks; he can occasionally climb stairs; he can occasionally climb ladders, ropes or scaffolds; he can occasionally perform all of the postural maneuvers (with occasional balance further defined as needing to avoid all narrow, slippery or erratic moving surfaces); he should avoid concentrated exposure to vibrations and hazards such as dangerous machinery and unprotected heights; and he can respond appropriately to infrequent changes in the work setting and take appropriate precautions for normal hazards in the workplace.[32]

Mr. Wiggin argues that the ALJ did not consider his difficulty in regulating his emotions in the residual functional capacity assessment. He further argues that if that limitation had been considered it might have resulted in finding that he was disabled because the vocational expert testified that if a person were off task for more than ten percent of the work day there would be no jobs available.

Contrary to Mr. Wiggin's argument, the ALJ addressed his difficulty in regulating his emotions for purposes of assessing his residual functional capacity. The ALJ credited Dr. Gustavson's opinion that Mr. Wiggin was "unable to consistently regulate his emotions due to irritability, fatigue, poor sleep and resulting poor attendance." The ALJ noted Mr. Wiggin's social interactions and other activities as evidence that his fatigue, one of the cited causes of his difficulty in regulating his emotions, was not as severe as

---

[32] Tr. at 26.

Mr. Wiggin reported.[33] The ALJ also incorporated the limitation from Dr. Jacobson's opinion that he could only respond appropriately to infrequent changes in the work setting to address the limitation found by Dr. Gustavson. Mr. Wiggin provides no contrary opinion or other evidence in the record to show that his difficulties with regulating his emotions either would not be adequately addressed by limiting his exposure to changes in the work setting or would cause him to be off task while working.[34] As such, Mr. Wiggin has not shown that the ALJ's residual functional capacity assessment was incorrect.

The residual functional capacity assessment is supported by substantial evidence in the record.

**Conclusion**

---

[33] In his reply, Mr. Wiggin asserts that the Acting Commissioner relied on "*post-hoc* rationalizations" to support the ALJ's residual functional capacity assessment. Doc. no. 9, at 2. He is mistaken. A post-hoc rationalization is a rationale offered on review that was not included in the decision. See, e.g., Amanda I. v. Kijakazi, 2023 WL 1860174, at *4 (D. Me. Feb. 9, 2023); McDonald v. Kijakazi, 2022 WL 17798108, at *6, n.4 (D.N.H. Dec. 19, 2022). He states that the ALJ and the Acting Commissioner provided the same rationale, which is not a post-hoc rationalization by the Acting Commissioner.
[34] Mr. Wiggin bears the burden to show that he is disabled within the meaning of the Social Security Act. Seavey, 276 F.3d at 5.

For these reasons, the court denies Mr. Wiggin's motion to reverse[35] and grants the Acting Commissioner's motion to affirm.[36] The clerk of court shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: July 14, 2023

cc: Michael L. Henry, Esq.
     Janine Gawryl, Esq.

---

[35] Doc. no. 5.

[36] Doc. no. 8.